ISIDORE GARNETS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36598, 45707. Promulgated June 10, 1932.

*Joseph Getz, Esq.*, for the petitioner.
*Frederick K. Slanker, Esq.*, for the respondent.

OPINION.

ARUNDELL: This proceeding involves section 209(a) of the Revenue Act of 1926, which, as far as material here, provides:

(1) The term "earned income" means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered * * *. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, a reasonable allowance as compensation for the personal services actually rendered by the taxpayer, not in excess of 20 per centum of his share of the net profits of such trade or business, shall be considered as earned income.

The statute quoted lays down two classifications in respect of the source of the income that is treated as earned. The first class is that in which the income is compensation for personal services

actually rendered. The second includes situations where, in addition to the personal services rendered, capital is a material income-producing factor. Petitioner contends that he comes within the first classification, whereas the respondent has determined that he comes under the second group. The descriptions of the two groups are contained in the same section of the statute, and the provisions regarding each group must be considered as being in *pari materia*. Neither one is to be regarded as an exception, but in each case it must be decided on the facts which classification is applicable.

In the present case the respondent has determined that the source of petitioner's income was the operation of a " trade or business in which both the personal services and capital are material income-producing factors." Under our procedure that determination is presumptively correct.

The evidence establishes that petitioner rendered personal services to the Alpha School and that at least a part of the income of the school was attributable to his services. We have no doubt that it may be possible to conduct a successful school entirely by means of personal service and without the use of capital. But in our opinion this is not such a case. Here we have a school for the conduct of which a building of substantial size is required, and in which there was used equipment valued at over $15,000 in 1925 and over $28,281.58 in 1927. These substantial investments can not easily be dismissed from view. The equipment owned by petitioner and used in the operation of the school included about 400 desks, 100 typewriters, a number of calculating machines, mimeographs, multigraphs, and other equipment necessary to teach commercial subjects, and one or two automobiles. Even the slightest knowledge of the operating methods of modern business or commercial schools makes it obvious that the possession of such equipment as petitioner had is more than a mere incident in the successful operation of the school. On the contrary, it is indispensable. The theory of bookkeeping might well be taught without extensive equipment, but modern schools realize that theory alone will not produce a practical bookkeeper and so they provide desks on which the student may spread his practice materials. It is equally plain that no amount of theory can produce a proficient typist or operator of machines used in modern business, but that machines for demonstration and practice are necessary. In *Atlanta-Southern Dental College*, 15 B. T. A. 1325; affd., 50 Fed. (2d) 34, one of the elements necessary for the taxpayer to establish was that capital was not a material factor in the production of income, which consisted largely of tuition fees. On this phase of the case the Circuit Court said:

\* \* \* As to the tuition fees, it is perfectly plain that they were earned and produced by the use of a plant and equipment without which, no matter how

eloquent the teaching of the stockholding professors might have been, no matter how magnetic the influence and drawing capacity of the stockholders, no single student could have been drawn to the school, or if drawn, kept and instructed there.

In *Metropolitan Business College*, 24 Fed. (2d) 176, in which the taxpayer was seeking classification as a personal service corporation, the court after referring to the taxpayer's investment in desks, typewriters and other teaching paraphernalia, said:

\* \* \* That all this was capital can not be gainsaid, and that it was " income-producing " is as certain as the fact of its employment in the process of conferring education upon the students who were paying the price. The things represented by this capital investment constituted the " plant " which, directly operated by the teaching force, under the general direction of the management, conferred the education which produced the income.

The burden of proof in this proceeding is on the petitioner to show that capital was not a " material income-producing factor " within the meaning of that phrase as interpreted and applied by the courts in personal service corporation cases. The evidence here is mostly devoted to showing what petitioner's personal activities were in the operation of the school, and is insufficient to overcome the presumption that respondent was correct in classifying petitioner as one whose earned income is subject to the 20 per cent limitation.

Viewing the case from another angle, we are of the opinion that petitioner's income from the school does not come within the statutory definition of earned income as " amounts received for personal services actually rendered." Aside from the use of capital in the business, it is plain that the income was not due alone to petitioner's personal services. He employed about twelve teachers, to whom he paid annual salaries of approximately $30,000. Clearly, those instructors would not have been engaged if petitioner could have conducted the school on the same scale without them. Petitioner testified that the faculty was composed of the most experienced teachers he could get and that they were all graduates of institutions of higher learning. It is difficult to believe that teachers of the high caliber indicated by petitioner's testimony were merely incidental to the operation of the business. It is pointed out in *Metropolitan Business College, supra*, that teachers in a business school are in a very different class from messengers and others serving the principal owners in a personal capacity, and that it is mainly through the contact between teachers and students that tuition is earned.

On the evidence we see no error in respondent's limitation of earned income by the 20 per cent provision of the statute.

*Decision will be entered under Rule 50.*